UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-61721-CIV-COHN/SELTZER

GUCCI AMERICA, INC.,

    Plaintiff,

v.

ANNYTRADE.ORG, et al.,

    Defendants.
_____/

## ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION

**THIS CAUSE** is before the Court upon Plaintiff's Motion for Preliminary Injunction [DE 6] ("Motion"). The Court has carefully reviewed the Motion, the attached declarations and exhibits [DE 6-1–6-15], and the record in this case. The Court has also heard oral argument from Plaintiff's counsel at a hearing on August 28, 2013. Although Defendants received notice of these proceedings, no Defendant responded to the Motion or appeared at the preliminary-injunction hearing.

**I.    Background**

On August 8, 2013, Plaintiff Gucci America, Inc., filed this action against fifty partnerships and business associations that sell clothing, accessories, and similar goods through Internet websites and auction stores. See DE 1 (Compl. for Damages & Inj. Relief).[1] Plaintiff's Complaint alleges that Defendants' goods bear counterfeit and confusingly similar imitations of registered trademarks owned by Plaintiff (the "Gucci Marks"). More, Plaintiff contends that several of the Defendants have acted with a bad-

---

[1] Plaintiff's Complaint also names unknown "John Doe" Defendants who own and operate the Defendant businesses.

faith intent to profit from the Gucci Marks by registering website domain names that are identical to, confusingly similar to, or dilutive of the Gucci Marks.  The Complaint asserts claims for trademark counterfeiting and infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114; false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); cybersquatting under Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d); and common-law unfair competition.  See DE 1 at 14-19.  In general, Plaintiff seeks preliminary and permanent injunctions barring further illegal conduct by Defendants, an order requiring that Defendants' domain names be disabled or transferred to Plaintiff's control, and recovery of profits and other damages resulting from Defendants' unlawful conduct.  See id. at 19-22.

Three days after filing its Complaint, Plaintiff filed an *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets Tied to the Counterfeiting Operation ("*Ex Parte* Application"), see DE 6, along with declarations and exhibits supporting that filing.  See DE 6-1–6-15.  On August 14, 2013, the Court granted Plaintiff's request for a temporary restraining order ("TRO") and an order restraining certain payment accounts used by Defendants.  See DE 12 (Sealed Order Granting *Ex Parte* Appl. for Entry of TRO).[2]  Based on strong evidence that Defendants are selling counterfeit and infringing versions of Plaintiff's trademarked goods, the Court found that Plaintiff had established all four requirements for a TRO:  (1) a substantial likelihood of success on the merits, (2) that Plaintiff would suffer irreparable injury if a restraining order were not granted, (3) that the threatened

---

[2] Because Plaintiff's *Ex Parte* Application was originally filed under seal, the Court's Order granting the Application was likewise sealed.  Since that time, however, the Court granted Plaintiff's motion to unseal the *Ex Parte* Application.  See DE 16.  Accordingly, this Order is filed publicly, and the Court will also unseal the prior Order.

injury to Plaintiff outweighed the harm the relief would cause to Defendants, and (4) that entry of the restraining order would serve the public interest.  See DE 12 at 12-14; Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225-26 (11th Cir. 2005) (per curiam).[3]  Further, noting that Plaintiff may be entitled to equitable recovery of Defendants' illegal profits, see 15 U.S.C. § 1117(a), the Court found that the preliminary remedy of an asset freeze was appropriate because "Plaintiff has good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained."  DE 12 at 14-15.

In accordance with these findings, the Court temporarily restrained Defendants and their associates from using infringing versions of the Gucci Marks in connection with their products, websites, auction stores, and domain names.  See id. at 15-16.  The Court also ordered the registrars for Defendants' domain names to transfer those names to a holding account, after which all traffic to the websites would be redirected to a page displaying the filings in this case.  See id. at 16-18.  More, the Court directed PayPal, Inc., to freeze funds in payment accounts associated with certain Defendants and to transfer those funds to a holding account.  See id. at 18-26.  In addition, the Court required Plaintiff to post a bond of $10,000 and, after Defendants' PayPal accounts were frozen, to promptly serve all filings in this case on Defendants through their known e-mail addresses and the webpage containing the case filings.  See id. at

---

[3] Additionally, the Court determined that a TRO should issue without notice to Defendants because they could "easily and quickly transfer the registrations for many of the domain names, or modify registration data and content, change hosts, redirect traffic to other websites, and conceal or transfer their assets, thereby thwarting Plaintiff's ability to obtain meaningful relief."  DE 12 at 13-14; see Fed. R. Civ. P. 65(b)(1).

26-27.[4]

In the same Order, the Court set a hearing on Plaintiff's Motion for Preliminary Injunction and ordered Defendants to file and serve any Response to the Motion by August 22, 2013.  See DE 12 at 27.  Further, the Court directed the parties, by noon on August 23, 2013, to file Witness and Exhibit Lists for the preliminary-injunction hearing. See id. at 27-28.  The Court cautioned Defendants that "if they do not timely respond to Plaintiff's Motion for Preliminary Injunction and do not appear at the scheduled hearing, the Court may enter a preliminary injunction against them by default." Id. at 28 (emphasis omitted).

As noted above, Defendants neither responded to the Motion nor appeared at the hearing.  Before the hearing, Plaintiff identified three witnesses who had submitted written declarations in support of the Motion.  See DE 14 (Pl.'s Witness List & Ex. List). Because Defendants did not appear at the hearing, however, Plaintiff relied on the witnesses' declarations in lieu of live testimony.

## II. Discussion

The preliminary injunction sought by Plaintiff would maintain the TRO and asset freeze until this case is decided on the merits.  See Fed. R. Civ. P. 65(b)(2) (providing that a TRO normally expires after 14 days).  The requirements for issuing a preliminary injunction are the same as those for entering a TRO.  See Schiavo, 403 F.3d at 1225-26 ("[T]he four factors to be considered in determining whether temporary restraining or preliminary injunctive relief is to be granted . . . are whether the movant has established:  (1) a substantial likelihood of success on the merits; (2) that

---

[4] The record indicates that Plaintiff has complied with the bond and service requirements.  See DE 13 (Notice of Filing Bond); DE 18 (Certificate of Service).

4

irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest."). Because a preliminary injunction is "an extraordinary and drastic remedy," it may not be granted unless the moving party "clearly carries the burden of persuasion as to the four prerequisites." Church v. City of Huntsville, 30 F.3d 1332, 1342 (11th Cir. 1994) (internal quotation marks omitted); see McDonald's Corp. v. Roberts, 147 F.3d 1301, 1306 (11th Cir. 1998). Unlike a TRO, a preliminary injunction requires notice to the adverse party and a hearing. See Fed. R. Civ. P. 65(a).

In this case, Plaintiff is substantially likely to succeed on the merits of its claims. Plaintiff has presented clear evidence that Defendants are selling goods bearing unauthorized, infringing copies of the Gucci Marks, thereby confusing the public about the origin of those goods. See 15 U.S.C. §§ 1114, 1125(a). Plaintiff has likewise offered strong evidence that several Defendants have engaged in a bad-faith effort to profit from the Gucci Marks by registering website domain names that improperly use those trademarks. See 15 U.S.C. § 1125(d). Allowing Defendants to continue this illegal conduct would cause irreparable harm to Plaintiff by reducing sales of its genuine trademarked goods and by depriving it of the reputation and goodwill associated with those products. Also, because Defendants have no right to sell counterfeit and infringing goods, or to use the Gucci Marks in their domain names, the balance of harms strongly favors Plaintiff. And halting Defendants' conduct—which involves the sale of illicit goods through unlawful means—serves the public interest. Plaintiff has therefore clearly proven all four requirements for a preliminary injunction. See Schiavo,

403 F.3d at 1225-26; Church, 30 F.3d at 1342; see also Louis Vuitton Malletier, S.A. v. Bags-Watch-Replicas.org, No. 12-62096-CIV, 2012 WL 5398634 (S.D. Fla. Nov. 2, 2012) (granting preliminary injunction based on similar evidence).

Although Defendants have been given notice of the Motion and an opportunity to respond, they have made no effort to rebut Plaintiff's evidence warranting preliminary injunctive relief.  The Court thus concludes that Plaintiff's Motion should be granted.

### III.    Conclusion

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion for Preliminary Injunction [DE 6] is **GRANTED**;

2. All provisions of the Court's Sealed Order Granting *Ex Parte* Application for Entry of Temporary Restraining Order [DE 12] shall remain in effect while this case is pending or until the Court orders otherwise;

3. Plaintiff shall promptly serve a copy of this Order on Defendants through the means specified in paragraph 16 of the Sealed Order Granting *Ex Parte* Application for Entry of Temporary Restraining Order [DE 12 at 26-27]; and

4. The Clerk of Court is directed to **UNSEAL** the Sealed Order Granting *Ex Parte* Application for Entry of Temporary Restraining Order [DE 12].

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 28th day of August, 2013.

*[signature]*
JAMES I. COHN
United States District Judge

Copies provided to:

Counsel of record via CM/ECF